UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION



Written Opinion
Under the E-Government Act and Judicial Conference policy

| | |
|---|---|
| CARLESTER TAPP,                     ) | |
|                                     ) | |
|         Plaintiff,                  ) | |
|                                     ) | |
|     v.                              ) | 3:05-cv-123-WGH-LJM |
|                                     ) | |
| CHAD ELFREICH,                      ) | |
| MARCUS J. CRAIG and                 ) | |
| CRAIG L. PIERCE,                    ) | |
|                                     ) | |
|         Defendants.                 ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION

This cause having come before the Honorable William G. Hussmann, Jr., United States Magistrate Judge,[1] for summary judgment, the Magistrate Judge now enters the following Findings of Fact, Conclusions of Law, and Decision:

### Findings of Fact

1. Plaintiff is six feet four inches (6' 4") tall, and he weighed between 330 pounds and 340 pounds at the time of his arrest on March 3, 2005. (Deposition of Carlester Tapp ("Plaintiff's Dep.") pp. 6-7).

2. The Plaintiff is much larger than Officer Marcus Craig. (Tr. p.[2] 42).

---

[1] The parties consented to Magistrate Judge jurisdiction in this case. (Docket Nos. 33, 35). Chief Judge Larry J. McKinney entered an Order of Reference on October 20, 2006. (Docket No. 36).

[2] "Tr. p." and "Tr. pp." refer to page(s) of the trial transcript in *State v. Tapp*, 82D02-0503-FD-190.

3. Officer Craig is five feet nine inches (5' 9") tall and weighs 180 pounds. (Tr. pp. 60-61).

4. Plaintiff does not have any problems with his hearing or his eyesight. (Plaintiff's Dep. pp. 5, 87).

5. On March 3, 2005, Officer Marcus Craig was dispatched to the area of Sweetser and Elliott Streets in Evansville regarding a complaint of gunshots fired. (Tr. pp. 37-38).

6. Officer Craig was in uniform and in a marked Evansville Police Department car. (Plaintiff's Dep. pp. 103, 109; Tr. pp. 36, 49).

7. Officer Craig proceeded to the area of the complaint where he saw only the Plaintiff. (Tr. pp. 40-41, 46).

8. The area was dark. (Plaintiff's Dep. p. 140).

9. Officer Craig identified himself as a police officer, shined a spotlight on the Plaintiff, exited his car, and told the Plaintiff that he wanted to ask him a question. (Plaintiff's Dep. p. 103; Tr. pp. 41, 108).

10. The Plaintiff ignored Officer Craig, put his hands into his pockets, and walked away from Officer Craig. (Plaintiff's Dep. pp. 106, 143, 145; Tr. pp. 41-42).

11. The Plaintiff was carrying a loaded Ruger 9mm handgun. (Plaintiff's Dep. pp. 106, 143, 145; Tr. pp. 50, 57-58).

12. Officer Craig ordered the Plaintiff to stop, but the Plaintiff refused to stop. (Plaintiff's Dep. pp. 102-04, 125, 133-34; Tr. p. 42).

13. Officer Craig drew his weapon and ordered the Plaintiff to stop and called for back-up. (Tr. p. 43).

14. Officer Craig ordered the Plaintiff to show his hands, but the Plaintiff refused and continued to walk away from Officer Craig. (Tr. p. 43).

15. Officers Chad Elfreich and Craig Pierce arrived to assist Officer Craig. (Tr. p. 44).

16. The officers ordered the Plaintiff numerous times to remove his hands from his pockets, but the Plaintiff refused to comply so the officers attempted to use their Tasers on the Plaintiff to gain his compliance. (Plaintiff's Dep. pp. 109-11, 114-15; Tr. pp. 44, 95-97, 109-10).

17. Due to the Plaintiff's thick clothing, the Tasers did not work, and the Plaintiff did not feel the effects of the officers' Tasers. (Plaintiff's Dep. p. 106; Tr. pp. 44, 46, 98, 110).

18. The officers then approached the Plaintiff in order to take him to the ground and handcuff him. (Tr. p. 44).

19. The Plaintiff threatened the officers and said, "I'll shoot you motherfuckers." (Tr. pp. 45, 60, 100, 110).

20. The Plaintiff also fought the officers and struck Officer Elfreich in the eye with his fist. (Plaintiff's Dep. pp. 108-09, 117; Tr. pp. 45-46, 98-99, 110).

21. After struggling with the Plaintiff, the officers eventually got the Plaintiff to the ground. (Tr. pp. 47, 98, 111).

22. Officer Elfreich used an arm bar on the Plaintiff in order to get him handcuffed. (Tr. p. 111).

23. Plaintiff was on the ground with his face buried in the ground and he could not breath; Plaintiff was no longer resisting arrest but tried to move his face so that he could breath when his arm was pulled upward and it broke. (Plaintiff's Dep. p. 114).

24. Officer Elfreich was on top of Plaintiff, stretched Plaintiff's arm out straight, and then struck it with his elbow; the Officers also applied a Taser to Plaintiff's side. (Plaintiff's Dep. p. 115).

25. Officer Pierce suffered cuts and scratches in the fight. (Tr. pp. 48, 100, 113).

26. On March 8, 2005, the Plaintiff was charged in *State v. Tapp,* 82D02-0503-FD-190, with the following crimes: (1) Resisting Law Enforcement, a Class D Felony; (2) Resisting Law Enforcement, a Class D Felony; (3) Battery Resulting in Bodily Injury, a Class D Felony; (4) Battery Resulting in Bodily Injury, a Class D Felony; and (5) Carrying a Handgun Without a License, a Class A Misdemeanor. (*See* Certified Criminal Information and Docket from *State v. Tapp,* 82D02-0503-FD-190).

27. On June 16, 2005, Count V of the Criminal Information was amended enhancing the charge to Carrying a Handgun Without a License, a Class C Felony, because the Plaintiff had a previous conviction for Carrying a Handgun

Without a License.  (*See* Certified Docket from *State v. Tapp,* 82D02-0503-FD-190, p. 10).

28.  At the Plaintiff's criminal trial, he argued that the Defendants used excessive force against him.  (Plaintiff's Dep. pp. 137-38; Tr. p. 150).

29.  During its final instructions to the jury, the trial court, in its Instructions Nos. 6 and 7, in *State v. Tapp,* 82D02-0503-FD-190, instructed the jury regarding excessive force as a defense to Resisting Law Enforcement.  (*See* Court's Certified Instructions Nos. 6 and 7, *State v. Tapp,* 82D02-0503-FD-190).

30.  On July 19, 2005, the Plaintiff was found guilty by a jury of Resisting Law Enforcement, a Class A Misdemeanor; and guilty of Carrying a Handgun Without a License, a Class C Felony.  (*See* Certified Docket from *State v. Tapp,* 82D02-0503-FD-190, pp. 7-8; Plaintiff's Dep. pp. 61-62).

31.  On August 10, 2005, the Plaintiff was sentenced to serve five (5) years at the Indiana Department of Corrections.  (*See* Certified Abstract of Judgment and Docket from *State v. Tapp,* 82D02-0503-FD-190, p. 7; Plaintiff's Dep. p. 62).

32.  On August 30, 2005, the Plaintiff appealed his conviction, but it was affirmed on appeal in *Tapp v. State,* 82A01-0509-CR-419.[3]  (*See* Certified Docket from *State v. Tapp,* 82D02-0503-FD-190, p. 6; Plaintiff's Dep. p. 63; Certified Memorandum Decision – Not For Publication in *Tapp v. State,* 82A01-0509-CR-419).

---

[3] On June 8, 2006, the Indiana Court of Appeals affirmed the Plaintiff's conviction in *Tapp v. State,* 82A01-0509-CR-419.

33. The Plaintiff admits that he was resisting arrest by not responding to the officers' requests to stop, but claims that he otherwise never resisted the officers. (Plaintiff's Dep. pp. 134-37).

## Conclusions of Law

1. In *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308, 313 (1980), the Court held: "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *See also Whitley v. Seibel,* 676 F.2d 245, 248 n.1, 68 A.L.R. Fed. 848 (7th Cir.), *cert. den.* 459 U.S. 942, 103 S.Ct. 254, 74 L.E.2d 198 (1982).

2. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Licari v. City of Chicago,* 298 F.3d 664, 666 (7th Cir. 2002)(citing *Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 519, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986).

3. "In determining whether to apply the doctrine of collateral estoppel, Indiana courts have traditionally examined whether the party seeking estoppel established the following elements: (1) a final judgment in a former suit on the merits in a court of competent jurisdiction; (2) an identity of issues; and (3) the party to be estopped was a party in the prior action or in privity with that party.

However, the primary consideration in determining the appropriateness of allowing a party to assert collateral estoppel is whether the party against whom the judgment is pled had a full and fair opportunity to litigate the issue in a previous action and whether it would be otherwise unfair under the circumstances of the particular case to apply collateral estoppel. To make this determination, our courts consider the party's incentive and ability to litigate the prior action, including the interest at stake for the party in the previous proceeding and how the party perceived this interest." *Matter of C.M.,* 675 N.E.2d 1134, 1137 (Ind.Ct.App. 1997)(internal citations omitted). *See also Bienz v. Bloom,* 674 N.E.2d 998, 1003-04 (Ind.Ct.App. 1996).

  4. While Indiana courts have failed to address the issue, there is a body of law that addresses how a court in a civil suit is to treat a criminal conviction where the use of excessive force by police officers could have been a defense to a charge of resisting law enforcement. When a jury is instructed that an individual can resist the use of excessive force by an officer, the fact that the jury still convicted the individual of resisting arrest does not automatically bar a claim of excessive force in a subsequent civil action. *See Hernandez v. City of Los Angeles,* 624 F.2d 935, 937-38 (9th Cir. 1980); *DuFour-Dowell v. Cogger,* 969 F.Supp. 1107, 1117-18 (N.D. Ill. 1997). "Even while resisting an arrest, an arrestee can be subjected to force excessive for the situation." *Cogger,* 969 F.Supp. at 1118. Absent a showing by the Defendants that the jury clearly considered whether or not the officers used excessive force and unequivocally came to the conclusion

that they did not, the criminal conviction does not bar the claim of excessive force in a subsequent civil matter. *Id.* This Magistrate Judge concludes that Indiana courts presented with a similar matter would come to a similar conclusion.

5. As set forth above in the statement of material facts, there is a final judgment on the merits in *State v. Tapp,* 82D02-0503-FD-190, and the Vanderburgh Superior Court and the Indiana Court of Appeals are courts of competent jurisdiction. The Plaintiff raises some of the same legal and factual issues he raised in his criminal trial. He claims that he initially resisted Officers Craig, Elfreich, and Pierce, and that his resistance ceased prior to having his arm broken. (*See* Plaintiff's Dep. pp. 134-37). He claims that the officers used excessive force when they arrested him. (*Id.*)

The Court, in *State v. Tapp,* specifically instructed the jury on the issue of excessive force as a defense for Plaintiff under Indiana law. (*See* Court's Certified Instructions Nos. 6 and 7, *State v. Tapp,* 82D02-0503-FD-190). The Plaintiff was represented by competent counsel in *State v. Tapp*. The Plaintiff presented his defense, which included cross examination of the Defendants and the testimony from his own witnesses. The issues of whether the Plaintiff did or did not unlawfully resist arrest was litigated in *State v. Tapp.* By virtue of the doctrine of collateral estoppel, the Plaintiff may not now seek to relitigate an issue which has been conclusively determined in *State v. Tapp*. Because the jury determined that Plaintiff was guilty of resisting arrest and because Plaintiff admits that he was

resisting arrest by failing to acquiesce to the officers' demands to stop, Plaintiff may not relitigate whether or not the initial use of Tasers and the officers' actions of taking Plaintiff to the ground amounted to excessive force.

6.   However, because the Defendants have not met their burden of demonstrating that the jury in *State v. Tapp* considered whether or not the breaking of Plaintiff's arm and the final use of a Taser amounted to excessive force, the conviction in *State v. Tapp* does not operate as collateral estoppel for this limited issue.

### Decision

Therefore, this Motion for Summary Judgment is **GRANTED, in part,** and **DENIED, in part.** The Defendants are entitled to judgment as a matter of law on the issue of excessive force prior to the point where the Plaintiff claims he ceased resisting.  On the limited issue of whether the officers used excessive force after the Plaintiff allegedly ceased resisting, the matter shall proceed to trial.

The Magistrate Judge notes that the Plaintiff failed to appear at a settlement conference, did not respond to the Defendants' Motion for Summary Judgment, and failed to respond after the Magistrate Judge instructed him to do so.  The Final Pretrial Conference set for 3:00 p.m., Evansville time (CST), on January 2, 2008, is, therefore, **CONVERTED** to a Status Conference.  Plaintiff is **ORDERED** to appear at this conference, either in person in Room 328, Federal Building, Evansville, Indiana, or by telephone by calling the court's bridge line at 434-6403, and show cause why this matter should not be dismissed for failure to

prosecute the claim.  Defendants' counsel may appear by telephone by calling the court's bridge line.  The Jury Trial set for January 14, 2008, is **VACATED** and will be reset if Plaintiff appears at the conference on January 2, 2008.

    **SO ORDERED.**

**Dated:**  December 21, 2007

_____
    WILLIAM G. HUSSMANN, JR.
           Magistrate Judge

**Copies to:**

Carlester Tapp
701 E Chandler Avenue
Evansville, IN  47713

David L. Jones
BOWERS HARRISON LLP
dlj@bowersharrison.com

Robert W. Rock
BOWERS HARRISON LLP
rwr@bowersharrison.com